MICHAEL MCDONOUGH vs. EMMA S. ALMY.

Essex.    May 20, 1914. — June 17, 1914.

Present: RUGG, C. J., BRALEY, SHELDON, DE COURCY, & CROSBY, JJ.

*Contract*, Performance and breach.    *Words*, "Stationary steam engine."

If one contracts with a landowner to remove a ledge of rock to a certain level and for the purpose of the work proceeds to erect a stationary steam engine at a certain place within five hundred feet from dwelling houses, which by a city ordinance cannot be operated lawfully without a license from the board of aldermen, and his application for such a license is refused, the refusal of the license does not excuse him from the performance of his agreement, if he can perform it in a lawful manner by doing the work at somewhat less advantage in another place where he can make use of a license to erect a stationary engine already granted to the landowner.

A steam engine to be used for the purpose of removing a portion of a ledge of rock, which is set upon a concrete foundation and bolted and braced to the concrete in such a manner as to be immovable and free from vibration and which would be used in the same place for a period of'at least two or three years, is a "stationary steam engine" within the meaning of a city ordinance, which provides that such an engine shall not be erected or put up within five hundred feet of a dwelling house or a public building without a license from the board of aldermen.

CONTRACT, with two counts, the first for the alleged breach of a contract in writing, which is described in the opinion, and the second on an account annexed.    Writ dated January 7, 1905.

In the Superior Court the case was tried before *Pratt*, J.    The material evidence is described in the opinion.    At the close of the evidence the plaintiff asked the judge to give to the jury the following instructions:

"2. That under the contract of March 14, 1904, the plaintiff had the right to perform his part of the contract by installing his machinery, drills, stone crusher and other machinery upon any part of the defendant's premises described in said contract, that he deemed advisable, and if the authorities of the city of Salem prohibited him from doing the work under the contract at the place so selected by him, and the defendant was unable to procure a license or permit for him to perform his work under the con-

tract, then the defendant is liable to the plaintiff for such damages as he suffered by reason of such interruption or refusal on the part of the authorities to permit him to perform his work under said contract.

"3. If in order to perform the contract, it was necessary that a permit or license from the authorities of the city of Salem be issued before the plaintiff could perform said contract, and the defendant failed to obtain such necessary permit or license so that the plaintiff could not perform the work without violating the ordinances of the city of Salem, then such failure of the defendant would constitute a breach of the contract set forth in the first count of the plaintiff's declaration, and he would be entitled to recover such damages as he suffered by reason of such breach of the contract.

"4. The plaintiff was entitled to perform his part of the contract by commencing operations on any part of said premises where in his judgment it was proper to commence, and if a license or permit was necessary from the authorities of the city of Salem, then it was the duty of the defendant to procure said license or permit, and her failure so to do, if it resulted in preventing the plaintiff from continuing his work at such place so selected, would constitute a breach of said contract, and would entitle the plaintiff to damages for such breach.

"5. The defendant did not have the right under the contract to require the plaintiff to commence his operations at a place on the premises which was less convenient, less practical and more expensive to the plaintiff to perform his contract, than at some other place on the premises, and her demand on the plaintiff to do so would constitute a breach of her contract, and the plaintiff would be entitled to recover therefor under the first count of his declaration.

"6. If the defendant saw the plaintiff after the execution of the contract setting up his plant and made no objections thereto, then she would be estopped from claiming that the plaintiff should set up his plant on the Cliff Street side of the ledge.

"7. The act of the defendant on May 12, 1904, in applying for permission to put up for use and maintain a portable steam engine and boiler upon different portions of her land described in the contract, for the purpose of operating a stone crushing

plant, was in and of itself some evidence of an admission by the defendant of the right of the plaintiff to maintain his plant on Y Street, or any other part of the plaintiff's premises.

"8. Where a contract is silent or ambiguous with reference to any particular act or thing to be done by the parties thereto the jury have the right to consider, in determining what the contract was, the acts and declarations of the parties themselves, as bearing upon the proper determination of what the contract was between the parties.

"9. The notice by the defendant to the plaintiff that her application for a permit or license had been denied, and that he would have to stop working, constituted in law a justification for the plaintiff ceasing said operations, and he was justified after a reasonable time being given to the defendant to obtain said permission, to consider said contract broken by the defendant, and this entitled him to damages under the first count of the declaration.

"10. The plaintiff could not be required by the defendant to perform his contract, if such performance would constitute a breach of the law, and the defendant under the contract was bound to secure him the necessary permits in order to perform his contract, and failing so to do, is liable to the plaintiff for damages under the first count of the plaintiff's declaration.

"11. If the plaintiff waited from June until September for the defendant to obtain the necessary permits, and then notified her that he could not keep his plant there any longer, that in law would constitute a reasonable time to obtain the necessary permits, after which the plaintiff could consider the contract broken by the defendant, and he would be entitled to recover damages therefor under the first count of his declaration.

"12. If the defendant ordered the plaintiff to desist from operating his stone crushing plant on the Y Street side of said premises where it was installed, because the authorities of the city of Salem refused to grant a permit or license for its operation at that point, then that in law would be a breach of the contract by the defendant, and the plaintiff would be entitled to recover damages therefor under the first count of his declaration.

"13. If the defendant ordered the plaintiff to stop working the stone crushing plant after receipt of a notice to her from the

authorities of the city of Salem refusing her a permit or license to maintain a steam engine and boiler upon different portions of her land for the purpose of operating a stone crushing plant, and the plaintiff thereupon ceased his operations, such notice by the defendant to the plaintiff would be a breach of the contract, and entitle the plaintiff to damages under the first count of his declaration, and the refusal of the authorities of the city of Salem to grant such license or permit would not in law be a justification of the defendant for such a breach.

"14. If the defendant failed to provide for the contingency of the authorities of the city of Salem refusing to grant such permits as were necessary in order to enable the plaintiff to proceed lawfully with the performance of his contract, on any part of the defendant's land described in said contract, then the loss must fall upon her by reason of the happenings of such contingency, that is, her failure to obtain the necessary license or permits.

"15. The contract of the defendant was an unconditional promise to pay the contract price therein provided to the plaintiff, and if the plaintiff was prevented, either by the defendant, or by the city authorities from performing his contract, then he is entitled to recover damages for such prevention under the first count of his declaration.

"16. If the plaintiff was prevented from carrying out his part of the agreement of March 14, 1904, by a refusal of the authorities of the city of Salem to grant a permit or license, which was essential to its being lawfully carried out, the defendant, not having protected herself against such a contingency by some saving clause in her written contract, is not excused from the performance of the agreement, and is liable to the plaintiff in damages in like manner as if she herself had prevented the plaintiff from performing his agreement or had herself refused to perform it.

"17. If the authorities of the city of Salem refused to grant a permit or license, without which the plaintiff's stone crusher could not be lawfully operated in the place where he had set it up, that would constitute a breach of the defendant's contract, and entitle the plaintiff to damages under the first count of his declaration.

"18. The plaintiff had the right to set up and operate his stone crusher under the terms of the contract at any place on the premises described in the contract as he might choose, and the refusal

of the city authorities to permit him to operate at such place would constitute a breach of the defendant's contract, and entitle the plaintiff to damages under the first count of his declaration."

"20. The contract of March 14, 1904, was a binding contract upon both the plaintiff and defendant, and the defendant was bound under same to make all reasonable efforts to obtain orders for and to sell stone at fair market prices, and if she failed so to do, then the plaintiff would be entitled to damages for such breach.

"21. The defendant having bound herself by an absolute agreement for the performance of something not in itself unlawful, is not relieved from her obligation by the mere fact that in consequence of unforeseen circumstances, the performance of her contract has become unexpectedly burdensome, or even impossible, and the plaintiff is entitled to recover for such failure of the defendant to perform her part of the contract.

"22. Upon all the evidence, the steam boiler and steam engine set up by the plaintiff on the defendant's premises under the contract were not stationary, but were portable, and therefore no license was required to authorize the plaintiff to set up and use the same."

The judge refused to give any of these instructions, and gave, among other instructions, the following, which were requested by the defendant:

"16. Under the terms of the contract the defendant could require all the cellar stone procured in blasting of the size mentioned in the contract to be preserved and delivered by the plaintiff to whomsoever she might sell the same and could require that cellar stone should be the principal product produced, if in blasting it could be produced."

"25. That under the ordinance of the city of Salem in force in 1904, the plaintiff was required to apply and procure a license to blast.

"26. That the existence or non-existence of a license to blast is of no consequence in this case and the rights of the parties are in no way affected thereby."

"32. If the jury should find that the defendant knew that the plaintiff was erecting his plant on the Y Street side of the lot in a place where there was no license so to do and made no objection thereto, and permitted the plaintiff to proceed and thereafter the

city of Salem refused a license to operate the steam boiler and engine of the plaintiff at that place, and for that reason the operation at that place on the lot ceased; these facts would not excuse the plaintiff from proceeding on said lot to carry out his contract and if he refused to proceed, on the place on the lot where he lawfully could, that would constitute a breach of the contract on his part and he cannot recover."

The judge refused to make any of these rulings. On the first count of the declaration the jury returned a verdict for the defendant, and on the second count returned a verdict for the plaintiff in the sum of $80.66. The plaintiff alleged exceptions, which after the death of *Pratt,* J., were allowed by *Wait,* J.

The case was submitted on briefs.

*J. H. Sisk, W. E. Sisk & R. L. Sisk,* for the plaintiff.

*E. R. Anderson & H. Guild,* for the defendant.

Crosby, J. The plaintiff's declaration contains two counts.

The first count alleges a breach of a written contract, and the second is a count upon an account annexed. There is no question between the parties as to the second count.

The written instrument annexed to the plaintiff's declaration constitutes a valid, legal contract, binding upon the parties. The defendant, being the owner of a certain parcel of land in Salem upon which there was a trap rock ledge which she desired to have removed to a certain level, entered into a contract with the plaintiff, by the terms whereof she agreed "to permit the said McDonough to go upon the said premises, put in derricks, crushers and other stone machinery, suitable to remove the said stone and in such form and at such times as the said Almy may direct." The contract also provides that the defendant is to "sell such stone and in such form as it may be needed and directed by her, and she agrees to pay to the said McDonough the sum of sixty-five cents per ton for crushed stone suitable for the market as ordered by her. And for all cellar stone that may be produced in blasting, she agrees to pay the said McDonough, when she directs the delivery thereof, at the rate of three cents a face foot in an eighteen inch wall. All other building stone she agrees to pay the said McDonough at the same rate last mentioned and under the same style of measurement." There are certain other provisions of the contract not material to the issues between the parties. This

contract appears to be clear and explicit in its terms and free from ambiguity. It does not in terms contain any agreement on the part of the defendant that she will furnish to the plaintiff or obtain for him any permit or license to enable him to operate a steam engine or boiler in the performance of his work, nor can any such undertaking on her part be reasonably inferred from the language employed. When the contract was entered into there was an ordinance in force in the city of Salem which provided that "No . . . stationary steam boiler from which power is to be taken or any other fuel than coal or coke is to be used to create steam and no stationary steam engine shall be hereafter erected or put up to be used in this city without a license obtained from the board of aldermen; provided however that no such license shall be required for such an engine unless the same is to be erected within five hundred feet of a dwelling house or a public building." The undisputed evidence shows that the plaintiff erected a boiler and engine upon the defendant's land within a distance of five hundred feet from dwelling houses, and without a license or permit therefor, and that thereafter he was prohibited by the city officials from operating it. The plaintiff contends that no license was required of him for the erection of such steam engine and boiler.

Having entered into the contract the plaintiff was bound to carry out the part of it which he had agreed to perform unless he was prevented or excused therefrom by the conduct of the defendant. He could not, however, violate the law or ordinances of the city of Salem in an attempt to perform the work undertaken, but was bound to its performance in a lawful manner. The contract is absolute in its terms and contains no condition that the plaintiff's obligations thereunder shall be dependent upon his being able to secure proper license to enable him to perform the work which he agrees to do. When the contract between the parties was entered into, the defendant held a license from the board of aldermen to erect and maintain an engine and boiler on Cliff Street, where the plaintiff could have carried on the work, even if not so advantageously as it could have been carried on had the plaintiff's plant been on the Y Street side; and no contention is made that the plaintiff could not have acted under the license so granted. The contract therefore could have been per-

formed by the plaintiff in such a manner as to violate no law, and he is bound by its terms. *Gaston* v. *Gordon*, 208 Mass. 265. If the plaintiff believed that he could erect and operate his engine and boiler without a license, even if such a license was required, or that no license was required under the ordinance, he could not be legally excused from the performance of his contract if he found that he was mistaken as to his rights, but was required to proceed to do the work at such a place on the lot as he might lawfully occupy for that purpose.

The plaintiff contends that the engine erected by him was not stationary but portable, and that therefore the ordinance did not apply. This contention brings us to the plaintiff's first exception, which is to the instruction of the presiding judge that the steam engine erected by the plaintiff was a "stationary steam engine" within the meaning of the ordinance. We are of opinion that this ruling was right. There is no controversy between the parties as to the manner in which the engine was installed or the length of time it would remain upon the defendant's land in the performance of the work. The evidence shows that it was set upon a concrete foundation and bolted and braced to the concrete in such a manner as to be stationary and immovable, and free from vibration. There was also evidence to show that it would be used in the same location for a period of at least two or three years. Whatever may have been the character of the engine when it was brought to the plaintiff's land, we have no doubt that when it was set upon the concrete foundation and permanently attached thereto for the purpose of being used two or three years, it became a "stationary steam engine" within the meaning of the ordinance. The word "stationary" is defined as "fixed in a certain station," "a steam engine permanently placed;" while "portable" accurately describes an object "capable of being borne or carried; easily transported." Webster's New International Dictionary. Accordingly the ruling that the engine was a "stationary steam engine," as that term was used in the ordinance, was correct, and the exception must be overruled.

After the contract was made, the plaintiff erected a steam engine and boiler, built bins and started to set up his stone crusher on the Y Street side of the lot. There was evidence to show that

before the plaintiff began work crushing stone he was informed that he could not run his stone crusher where it had been located; that he stated to the defendant that he had made a mistake in starting to work on the wrong side of the ledge, and that he asked her if she would try to get a permit or license so that he could work on the Y Street side; that in compliance with this request the defendant made application to the board of aldermen for a license to erect a steam engine and boiler upon different portions of the lot, and that after hearing this application was denied. The defendant testified that she told the plaintiff, before he had installed his engine and boiler on the Y Street side of the ledge, that she had no license to erect a steam engine and boiler there but did have a license to erect such engine and boiler on the Cliff Street side; that later he told her he was going to place his crusher on the Y Street side of the lot, and that she replied that if he put his crusher on that side of the ledge he did it upon his own responsibility, and that he must take all the responsibility and risk of loss; and that the plaintiff replied "I will." The plaintiff contended that stone could be taken from the ledge and crushed on the Y Street side at less expense than from the upper, or Cliff Street, side of the ledge. The defendant testified that after her application for a license had been denied by the board of aldermen, the plaintiff stated to her that he would not move his stone crusher and other machinery to Cliff Street because of the expense involved in such removal. The plaintiff testified that the defendant notified him, after the application for a license had been denied, that he must stop work, and that she thereby terminated the contract to his damage. This is the breach of the contract specified by the plaintiff. The defendant denied that she ever stopped the plaintiff from carrying out his contract, or interfered with its performance, aside from stating to him that if he undertook to operate his steam engine and stone crusher on the Y Street side of the lot he must take all the responsibility and risk of loss.

The judge correctly instructed the jury that if the defendant refused to permit the plaintiff to perform his contract and ordered him to stop work, that would amount to a breach of the contract on her part, and their verdict should be for the plaintiff on the first count. As the verdict was for the defendant on that count

the plaintiff must have failed to satisfy the jury that he was forbidden or prevented by the defendant from carrying out his contract. The case was referred to an auditor, who also found that the defendant did not unqualifiedly forbid the plaintiff to carry on his work.

The plaintiff excepted to the refusal of the judge to give twenty requests for instructions. The requests numbered 2, 3 and 4 could not have been given, as it was no part of the duty of the defendant to procure a license to enable the plaintiff to perform his work. The fifth request also could not have been given, because there is no evidence to warrant a finding that the defendant required the plaintiff to begin his operations at any particular place on the premises. The seventh request was rightly refused. If the defendant, at the plaintiff's request, saw fit to apply for a license so that the plaintiff could operate his stone crusher on the Y Street side of the ledge, it would not be an admission by her of the right of the plaintiff to operate his plant there or elsewhere. The eighth request was rightly denied, because the contract is not ambiguous in its terms. The ninth request assumes that the defendant notified the plaintiff that he would have to stop work. This was denied by the defendant and was the principal issue of fact between the parties to be determined by the jury under the first count and so could not have been given. The tenth and eleventh requests were rightly refused. The defendant was not bound, for the reasons previously stated, to secure permits to enable the plaintiff to perform his contract. The twelfth and thirteenth requests could not have been given because, if a license was refused to operate the plant on the Y Street side of the premises, the plaintiff might have operated it on Cliff Street or on any other part of the premises where a license could be obtained for that purpose, if such license was required. The fourteenth, fifteenth, sixteenth, seventeenth and eighteenth requests assumed that the defendant was bound to procure the necessary licenses to enable the plaintiff to perform his contract, but as no such obligation rested upon the defendant, these requests could not have been given. The twentieth request was rightly denied. As no appreciable amount of stone ever was quarried, there was no occasion to obtain orders to sell it; besides, this request relates to damages and, in view of the verdict of the jury, has become

immaterial. The twenty-first request was denied rightly. Whether the defendant failed to perform her part of the contract was a question for the jury upon conflicting evidence. The judge having correctly ruled as matter of law that the steam engine and boiler erected by the defendant were stationary, the twenty-second request was rightly refused.

The presiding judge gave four instructions to the jury at the request of the defendant, and the plaintiff excepted. The defendant's request numbered 16 was immaterial because there was no evidence to show that any cellar stone was procured or quarried by the plaintiff. The plaintiff therefore could not have been harmed by the instruction given. The defendant's requests numbered 25 and 26 would seem not to have been material to any issue in the case, and we do not think that the plaintiff was prejudiced thereby. If a license to blast was required in order that the plaintiff might legally perform his contract, it was his duty to obtain it for the same reason that it was his duty to obtain a license to erect a stationary steam boiler and engine. The exception to the giving of the defendant's request numbered 32 cannot be sustained. If the plaintiff could not obtain a license to operate on Y Street, he was not thereby excused from the performance of the contract, but was bound to carry on his work on such portion of the premises as he could occupy for that purpose.

It is plain that none of the plaintiff's exceptions can be sustained. The case seems to have been carefully tried by the judge of the Superior Court; his instructions were full, clear and accurate, and were well calculated to assist the jury in arriving at a correct conclusion.

*Exceptions overruled.*