RALPH E. RUNELS *vs.* LOWELL SUN COMPANY
(and a companion case [1]).

Middlesex.     April 2, 1945. — June 30, 1945.

Present: FIELD, C.J., DOLAN, RONAN, WILKINS, & SPALDING, JJ.

*Evidence*, Relevancy and materiality, Of good faith, Hearsay, Competency. *Practice, Civil*, Exceptions: whether error harmful; Charge to jury; Preliminary question; Comment by judge; Requests, rulings and instructions. *Error*, Whether error harmful.

An exception to the admission of evidence must be overruled where, even if the evidence was inadmissible, the excepting party was not harmed in view of the fact that substantially the same evidence was introduced at other stages of the trial without objection by him.
On an issue whether a plaintiff, an official of a city's water department, had had corrupt motives in advocating an enlargement of the water

---

[1] The companion case is by James H. Reynolds against the same defendant.

system, a report by a consulting engineer, hired by the plaintiff, containing recommendations of the enlargement, was properly admitted "as a document to which" the plaintiff "had access," "as part of the data available to" the plaintiff, and "as bearing upon information which was available to" the plaintiff "in the files of the water department" and with which he was familiar.

An exception to the admission of evidence, admissible for only a limited purpose, was not to be sustained on the ground that the judge's statement to the jury of the limitations on the use of such evidence was inadequate, where the excepting party did not ask the judge for any amplification of his statement.

The exclusion of hearsay testimony of statements made concerning a party, admissible only if the judge made preliminary findings that a conspiracy existed between the party and the person making the statements and that the statements were made during the course of the conspiracy, showed no error where the judge in excluding the testimony made no specific preliminary finding respecting a conspiracy and the evidence warranted a finding that no such conspiracy existed.

A statement by a trial judge, that he did not think that certain testimony by an expert witness "is a very definite judgment. I can't agree with you," did not disclose error prejudicial to the party calling the witness where, on that party's excepting to the statement, the judge said, "I withdraw it. What I say doesn't mean anything to the jury, and I withdraw it."

A trial judge cannot be required to comment on or emphasize or make a ruling of law on an inconclusive fragment of the evidence or on subsidiary facts bearing on an issue.

At the trial of an action for libel based on statements that the plaintiff, a city official, had corruptly advocated the city's purchasing for a specified amount a parcel of land assessed for less than that amount, where the plaintiff admitted that he had advocated the purchase, requests by the plaintiff for rulings as to legal limitations upon the city's acquisition of the land, even if they did not state the law correctly, were immaterial and the granting of the requests did not harm the defendant.

A trial judge who has adequately instructed the jury on an issue and given the substance of certain correct requests for rulings relating thereto need not emphasize the subject matter of the requests by giving them in terms.

Two ACTIONS OF TORT. Writs in the Superior Court dated July 11, 1941.

The actions were tried before *Greenhalge*, J.

*F. Goldman*, (*G. V. Mottla* with him,) for the defendant.

*F. M. Qua*, (*R. B. Walsh* with him,) for the plaintiffs.

SPALDING, J. The plaintiffs Runels and Reynolds, superintendent and assistant superintendent respectively of the

water department of the city of Lowell, brought these actions of tort for libel against the defendant, the publisher of a newspaper in that city. Verdicts were returned for both plaintiffs, and the cases come here on exceptions taken by the defendant to numerous rulings during the trial and to the denial of motions for a new trial.

The article alleged to be libelous was published in an issue of the defendant's newspaper (The Lowell Sun) on July 8, 1941, and in substance stated that former Mayor Bruin had made the following charges: that water department officials were deliberately spoiling the city's water supply as part of a gigantic conspiracy to give the city a "trimming"; that employees of the department were muzzled and could not afford to tell the truth about the present condition of the water supply; that there was a deliberate attempt to spoil the city's water supply and create an artificial demand so that the proposal of the water department for the spending of $500,000 could go through; that department officials had asked for authority from the Legislature to purchase land for a well field in North Chelmsford; that this was nothing but a "land deal" and "that the land which the water department is prepared to spend $15,000 for was listed in several real estate offices with a purchase price of $2,500" and was assessed for approximately $5,300; and that water department employees who could not afford to talk were openly stating that river water was being placed directly in the reservoirs and mains in order to discolor the water and create a demand for this expensive program.

The defendant's answer in each case contained a general denial and the defences of truth and privilege.

There was undisputed evidence that during the early summer of 1941 the water of the city of Lowell was turbid and discolored and that this was the subject of many complaints and comments; that people spoke of it as dirty and filthy; that the plaintiff Runels advocated and recommended a comprehensive improvement program for the water system costing $500,000 which included the acquisition by the city of land in North Chelmsford (hereinafter

called the Smith land) for a well field at a cost of $15,000; that the plaintiff Reynolds knew of and approved this plan; and that both plaintiffs signed a petition to the General Court asking that the city be authorized to acquire the Smith land for the purpose of a water supply.

The defendant does not argue that the article, summarized above, could not be found to be libelous of the plaintiffs. Much evidence was introduced by the defendant on the issue of truth, but we shall refer to it only as it bears on the questions raised by the exceptions.

1. The plaintiff Runels in his direct testimony stated that he did not purposely give the city filthy water and that in fact it was not filthy; that he had samples of it taken on July 3 and on July 8, 1941 (the latter being the date of the article complained of), which were tested by the department of public health. Counsel for the plaintiffs were then permitted to read to the jury, over the defendant's objection and exception, extracts from a copy [1] of a letter addressed to Runels dated July 9, 1941, and signed by Dr. Jakmauh, commissioner of public health for the Commonwealth. The portions of the letter read were to the effect that bacterial examinations of samples of Lowell water collected on July 3 and 8, 1941, showed that the water was "free from bacteria characteristic of pollution and safe for drinking" and that while the water was "somewhat objectionable from the standpoint of iron, color and turbidity . . . [it was] of safe sanitary quality."

The plaintiffs seek to support the admission of this evidence on the ground that, although hearsay, it falls within the exception that makes admissible records made by public officers in the performance of their official duties. See *Commonwealth* v. *Slavski*, 245 Mass. 405, 415–417. But we do not find it necessary to decide this question because we are convinced that, if there was any error in admitting it, it did not harm the defendant. Substantially this same evidence was introduced at other stages in the trial without objection by the defendant. It appears that eight photo-

---

[1] No objection was made because the letter was offered in the form of a copy rather than the original.

static copies of bacterial examinations of Lowell water made by the department of public health, which included analyses of the samples collected on July 3 and July 8, were admitted without objection. These analyses tended to confirm the information contained in Dr. Jakmauh's letter. Moreover, one Flood, called by the defendant, who was formerly employed as a chemist and bacteriologist in the water department of the city of Lowell, testified that the analyses of these samples by the department of public health showed that they contained "no coli" and that they were "safe." This exception must therefore be overruled. *Morrison* v. *Lawrence,* 186 Mass. 456, 458. *Chandler* v. *Prince,* 217 Mass. 451, 459. *Clark–Rice Corp.* v. *Waltham Bleachery & Dye Works,* 267 Mass. 402, 412. *Nash* v. *Heald,* 306 Mass. 518, 522. *Bendett* v. *Bendett,* 315 Mass. 59, 65–66. G. L. (Ter. Ed.) c. 231, § 132.

2. The defendant excepted to the exclusion of a letter dated October 11, 1941, from Dr. Jakmauh to the plaintiff Runels. Its contents, which were not related to the earlier letter discussed above, need not be recited. It is sufficient for present purposes to state that, in addition to being hearsay, it was replete with opinions and recommendations with respect to various aspects of the Lowell water system and was clearly inadmissible. The defendant argues that the judge either should have admitted both of Dr. Jakmauh's letters or should have excluded both. This contention does not merit further discussion.

3. During redirect examination, the plaintiff Reynolds testified that one Barbour, a consulting engineer, was engaged in 1937 or 1938 by the plaintiff Runels to make a survey of the water system of Lowell, and that he rendered a report in which he made certain recommendations. Over the objection of the defendant the report was then introduced in evidence. The judge stated, "I am disposed to admit it as a document to which the plaintiffs had access. . . . As part of the data available to the plaintiffs, I admit it. Its only probative value as to the matter set forth is as bearing upon information which was available to these

plaintiffs in the files of the water department." Had the
report been admitted to prove the truth of the matters
therein contained it would have been inadmissible, but we
think it was rightly admitted for the limited purpose stated
by the judge.

One of the issues in the cases under the defence of truth
was whether the plaintiffs had advocated an enlargement
of the water system for corrupt purposes. The plaintiffs
admitted that they had advocated an enlargement but as-
serted that they did so in good faith. Their motives were
therefore material. As bearing on this issue the plaintiffs
had a right to show that, when they drew up their proposals,
they were familiar with a report made by a consulting engi-
neer to the plaintiff Runels in which he advised additions
to the city's water supply and recommended the develop-
ment of well fields on the Smith land. Where the state of
mind or belief of a party is in issue, "any evidence was
competent which tended to show the existence of such facts
or circumstances as would naturally influence the mind of
an honest and reasonable man in forming a conclusion in
relation to the subject matter involved in the issue." *Car-
penter* v. *Leonard*, 3 Allen, 32, 33. *Bacon* v. *Towne*, 4 Cush.
217, 238–240. *Boardman* v. *Kibbee*, 10 Cush. 545, 547–548.
*Falvey* v. *Faxon*, 143 Mass. 284, 285, 286. See *Moran* v.
*School Committee of Littleton*, 317 Mass. 591, 595; Wigmore
on Evidence (3d ed.) § 1789.

The defendant argues that the judge failed to give the
jury adequate instructions concerning the limitations placed
on this evidence. If the defendant did not think the state-
ment made by the judge was sufficiently clear on this point,
it should have asked for further instructions. This it did
not do. "Where evidence is admissible on any ground, the
objecting party must clearly specify incompetent ends for
which it may be considered and ask for definite instructions
in order to save a valid exception." *Drew* v. *Drew*, 250
Mass. 41, 45. *Wachtel-Pickert Co.* v. *Leonard*, 217 Mass.
417, 419. *Leavitt* v. *Maynes*, 228 Mass. 350, 353, 354.
*Wagman* v. *Ziskind*, 234 Mass. 509, 511.

4. The exclusion of the testimony of the witness Sweeney

relating to certain statements made to him by Smith tend-
ing to show that Reynolds was to receive part of the $15,000
to be paid for the Smith land was not error.  This was.
hearsay and was admissible only if a conspiracy existed
between Smith and Reynolds and Smith's statements were
made during the course of the conspiracy.  *Commonwealth*
v. *McDermott*, 255 Mass. 575, 581.  *Commonwealth* v.
*Coshnear*, 289 Mass. 516, 526.  Whether such a conspiracy
existed was a preliminary question of fact to be determined
by the trial judge (*Burke* v. *Miller*, 7 Cush. 547, 550; *Com-
monwealth* v. *Brown*, 14 Gray, 419, 432; *Commonwealth* v.
*Scott*, 123 Mass. 222, 235; *Commonwealth* v. *Rogers*, 181
Mass. 184, 193; *Commonwealth* v. *MacKenzie*, 211 Mass.
578, 580; Wigmore on Evidence [3d ed.] § 2550), whose
decision is conclusive unless the record shows error of law
in reference to the preliminary inquiry.  *Gorton* v. *Hadsell*,
9 Cush. 508, 511.  *Slotofski* v. *Boston Elevated Railway*, 215
Mass. 318.  *Coghlan* v. *White*, 236 Mass. 165, 168.  *Cummings*
v. *Moore*, 305 Mass. 105, 107.  *Commonwealth* v. *Hoff*, 315
Mass. 551, 553.  No such error is shown on this record.[1]

5. One Murphy, a real estate expert, called by the de-
fendant, while testifying as to the value of the Smith land
stated, in substance, that he was unable to determine
whether the land had an increased value by reason of what
was below the surface without knowing more about it, and
that he would have to know the cost of sinking wells and
how far the water had to be pumped.  The following then
took place: "The JUDGE: Why? . . . [The WITNESS:] To
develop the real value of the source he speaks of.  There
might be water anywhere along the stream, but if it is
miles and miles from where we wanted to use it, it wouldn't
be as valuable.  The JUDGE: You can determine that by
looking, can't you, in this case? . . . [The WITNESS:] We
mostly look along the river bank or the pond or stream,
and we figure whether in our judgment there must be water
underneath.  The JUDGE: I don't think that is a very

---

[1] The trial judge in excluding the testimony as to the statements of Smith
made no express finding on the issue of the existence of a conspiracy.  There
was conflicting evidence on that issue. — REPORTER.

definite judgment. I can't agree with you." The last remark by the judge was excepted to by the defendant. The JUDGE then stated, "I withdraw it. What I say doesn't mean anything to the jury, and I withdraw it."

The defendant argues that this remark was so prejudicial as to require a reversal. We cannot agree. The judge made it clear that what he had said did not "mean anything to the jury" and withdrew it. This was sufficient to cure any error, if any there was. *Todd* v. *Boston Elevated Railway*, 208 Mass. 505. See *Partelow* v. *Newton & Boston Street Railway*, 196 Mass. 24, 31–35.

6. The judge did not err in denying the defendant's requests numbered 1, 2, 3, 4. These were to the effect that the city of Lowell would not be limited by the provisions of G. L. (Ter. Ed.) c. 40, § 14, as appearing in St. 1933, c. 283, § 1,[1] and G. L. (Ter. Ed.) c. 43, § 30, as appearing in St. 1938, c. 378, § 11,[2] in acquiring the Smith land. We need not pause to consider whether they correctly stated the law because in any event the judge was not obliged to give them. They did not relate directly to any issue in the cases, but asked instructions at best only as to a single consideration bearing upon an issue. *Barnes* v. *Berkshire*

---

[1] "SECTION 14. The aldermen of any city, except Boston, . . . may purchase, or take by eminent domain under chapter seventy-nine, any land, easement or right therein within the city . . . not already appropriated to public use, for any municipal purpose for which the purchase or taking of land, easement or right therein is not otherwise authorized or directed by statute; but no land, easement or right therein shall be taken or purchased under this section unless the taking or purchase thereof has previously been authorized by the city council . . ., nor until an appropriation of money, to be raised by loan or otherwise, has been made for the purpose by a two thirds vote of the city council . . . , and no lot of land shall be purchased for any municipal purpose by any city subject to this section for a price more than twenty-five per cent in excess of its average assessed valuation during the previous three years."

[2] "SECTION 30. At the request of any department, and with the approval of the mayor and the city council under Plan A, B, C or D, or with the approval of the city manager and the city council under Plan E, the city council may, in the name of the city, purchase, or take by eminent domain under chapter seventy-nine, any land within its limits for any municipal purpose. Whenever the price proposed to be paid for land for any municipal purpose is more than twenty-five per cent higher than its average assessed valuation during the previous three years the land shall not be purchased, but shall be taken as aforesaid. No land shall be taken or purchased until an appropriation by loan or otherwise for the general purpose for which land is needed has been made by the city council, by a two thirds vote of all its members; nor shall a price be paid in excess of the appropriation, unless a larger sum is awarded by a court of competent jurisdiction."

*Street Railway,* 281 Mass. 47. *Conroy* v. *Fall River Herald News Publishing Co.* 306 Mass. 488, 492. *Gregory* v. *Maine Central Railroad,* 317 Mass. 636, 641. Moreover, as will be seen presently in discussing the plaintiffs' requests, they had no materiality to the issues being tried.

The judge might very well, for the same reasons, have refused to grant the plaintiffs' fifteenth and sixteenth requests[1] which dealt to a considerable extent with the same matter. But he granted them and the defendant contends this was prejudicial error. Presumably in granting these requests the judge had in mind the provisions of G. L. (Ter. Ed.) c. 40, § 14, and c. 43, § 30, mentioned above. The defendant argues that these provisions are applicable only to the taking or purchase of land within the limits of the municipality acquiring the land. Assuming for present purposes that this contention is correct and that these requests did not correctly state the law, we are of opinion that the defendant was not harmed. The statements in the alleged libel respecting the acquisition of the Smith land, which were placed in issue by the defence of truth, were that a committee of the Legislature was about "to consider the plea of water department officials for authority to purchase" the land, that "the water department is prepared to spend $15,000" for the land, and that "the assessment on the property . . . is in the vicinity of $5,300." No question was raised by the plaintiffs but that these allegations were substantially true. Each plaintiff admitted on the stand, and the declaration of each alleged, that he had urged the purchase of the Smith land by the city at a price of $15,000. The plaintiffs also admitted that they had taken steps to obtain legislative approval for the acquisition of

---

[1] "15. Under the bill introduced into the Legislature by the plaintiff (exhibit 2), if said bill had been passed the city would have had no right to pay more than twenty-five per cent above the average assessed value for three years prior to the date of purchase of the land in question if it had taken it by purchase and the city would have had a right to take said land by eminent domain. 16. Under the law and statutes a city may take or purchase land for a municipal purpose only by a two-thirds vote of the city council and may not pay in case of purchase more than twenty-five per cent in excess of the average assessed valuation for three years prior to the date of purchase. The plaintiff in this case had no right or power to purchase land for the water department or to determine the price to be paid therefor."

the land.   There was evidence, not contradicted, that the Smith land was assessed for $5,400 for the years 1940 and 1941.

In view of this, what the actual limitations on the city were with respect to the acquisition of the Smith land was not material to any issue in the cases.   The granting of the requests under consideration, therefore, even if they did not correctly state the law, cannot be said to have "injuriously affected the substantial rights" of the defendant within the meaning of G. L. (Ter. Ed.) c. 231, § 132.   See *McDonough* v. *Almy*, 218 Mass. 409, 418–419.

The judge refused the defendant's ninth request that "there is evidence upon which the jury may find that the defence of truth has been established and that there was no actual malice on the part of the defendant."   There was no error in the refusal to give this request.   In submitting the cases to the jury on all the issues, including those of truth and malice, the judge in effect granted this request. He was not required to go farther and to give it additional emphasis.   *Sanford* v. *Boston Herald-Traveler Corp.*, *ante*, 156, 159.   We might add that the judge's charge is set forth in full in the record and an examination of it convinces us that the jury were properly instructed as to all the essential issues in the cases.

7. There was no error in the denial of the defendant's motions for new trials.   The grounds on which they were based presented no questions of law but related to matters addressed to the sound judicial discretion of the trial judge. There is nothing in the record before us to show that there was an abuse of that discretion.   *Mantho* v. *Nelson*, 285 Mass. 156, 158.

*Exceptions overruled.*