CLARK-RICE CORPORATION *vs.* THE WALTHAM BLEACHERY
AND DYE WORKS.

THE WALTHAM BLEACHERY AND DYE WORKS *vs.* CLARK-
RICE CORPORATION.

Suffolk.   April 5, 1929. — May 31, 1929.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, & SANDERSON, JJ.

*Contract,* Construction, Performance and breach, Implied, Of employ-
ment. *Evidence,* Competency, Relevancy and materiality, Book
entries, Of agency. *Agency,* Existence of relation, Scope of authority
or employment. *Pleading, Civil,* Declaration. *Practice, Civil,* Order-
ing verdict, Exceptions. *Damages,* In contract, Nominal. *Witness,*
Cross-examination. *Corporation,* Officers and agents.

A bleachery corporation on January 1 made a contract in writing with
another corporation organized under the laws of New York, whereby
the second corporation was given the exclusive right for three years to
solicit business for the bleachery, which agreed to pay the selling
corporation each month certain guaranteed commissions and further
commissions according to the amount of business procured by the
selling corporation. The contract contained no provision that the
selling corporation should not act as agent for others than the bleachery.
The following December 1 the selling corporation voted to dissolve,
a new corporation having been organized to carry on its business.
Having endeavored unsuccessfully to induce the bleachery to execute
a new contract with the new corporation, the selling corporation
asked that its resignation as selling agent of the bleachery be accepted
as of December 31, and, on the next January 7, a certificate of its
dissolution was filed with the New York officials. The laws of New
York provided that, after dissolution, a corporation should have the
power to carry out its contracts, that it should continue for the pur-
pose of discharging existing liabilities and that it might "sue and be
sued in its corporate name." At the trial together of cross actions
thereafter commenced, the first by the selling corporation to recover
commissions earned in November and December, and the second by
the bleachery to recover for breach of the contract by reason of
the selling corporation's resignation and dissolution, there was evi-
dence that, in the last week of December, 1926, the bleachery, ignor-
ing the selling corporation, had itself solicited customers with intent
not to give credit therefor to the selling corporation, and that it had
failed to furnish the selling corporation with daily reports of business
transacted, as required by the terms of the contract. The trial judge
charged the jury that such conduct by the bleachery would be a breach

of the contract if done before December 31, but that the selling corporation could not recover if it voluntarily or without just cause failed to perform its part of the contract. *Held,* that

(1) Testimony, that the selling corporation had given business obtained by it to bleacheries competing with the bleachery corporation, did not show a breach of the contract by the selling corporation; and the exclusion of such testimony during the cross-examination of a witness for the selling corporation did not constitute an abuse of discretion on the part of the judge;

(2) Evidence offered by the selling corporation, as to the organization of the new corporation and to show that the bleachery could have obtained therefrom substantially the same services from the same employees as it could have obtained under the contract with the selling corporation, was competent in mitigation of damages in the action brought by the bleachery;

(3) There was no error in the admission of testimony as to the reasons for the writing of a letter of resignation from the selling corporation to the bleachery, nor was the selling corporation precluded from introducing in evidence reasons not stated in such letter;

(4) A certain account book of the selling corporation having been introduced in evidence and a part of the items therein read to the jury without objection, there was no error in a refusal by the judge to order struck out certain pencil entries which appeared in the ledger and which had been therein when it was audited;

(5) In the circumstances and in view of certain other testimony admitted without objection, there was no error prejudicial to the bleachery in the admission of testimony that one, who had become the largest stockholder of the bleachery, had given orders to employees which had been obeyed and that he had engaged in other activities about the bleachery, such testimony being introduced to show that such person had authority to speak for the bleachery;

(6) In view of the instructions to the jury, there was no error in a ruling by the judge that a dissolution of the selling corporation after December 31 would not excuse the bleachery from payment of the commissions sought to be recovered by the selling corporation; nor in a refusal to rule that the vote of the selling corporation to dissolve terminated its right to performance of the contract by the bleachery;

(7) The questions, whether the bleachery had committed a breach of the contract and whether the selling corporation was justified in resigning by the conduct of the bleachery, were for the jury;

(8) There was no error in a refusal to give rulings, in substance, that the selling corporation was barred from recovery if it failed to perform its part of the contract: the rulings requested were sufficiently covered by the instructions to the jury.

At the trial of the actions above described, there was evidence that a certain man in December had the duty to supervise details of manufacture and selling for the bleachery; that he in general was authorized to conduct its business; that he was "manager of the works"; and that questions arising under the contract with the selling corporation had been under his supervision to some extent at least. *Held,* that

(1) A finding was warranted that he was authorized to deal with the selling corporation concerning its agency for the bleachery;

(2) No error was shown in the admission of statements made by him to an officer of the selling corporation or of correspondence between them in December;

(3) Such testimony was not incompetent by reason of the absence of evidence that he was an officer of the bleachery or authorized to execute a contract with the new corporation.

No exception lies to the admission of evidence which is substantially the same as other evidence admitted without objection.

Contentions, that a certain question asked at the trial of an action was too broad, and that the answer thereto was not responsive, cannot be made for the first time in this court.

A witness was asked on cross-examination at the trial above described whether the bleachery knew before December 31 that the selling corporation was going to resign, and answered that it did not have that knowledge but that it knew that the bleachery was not going to continue. The witness later testified that it was not the officers of the bleachery who knew that it was not going to continue, but the largest stockholder. The bleachery then moved that the testimony concerning the knowledge of the bleachery be struck out. The motion was denied. *Held*, that no error appeared.

In an action in which the declaration contains several counts, a motion by the defendant that a general verdict be ordered in his favor properly is denied if there was evidence warranting a verdict for the plaintiff upon any of the counts.

The declaration in the action by the selling corporation above described was in two counts, the first setting forth the contract and alleging performance thereof by the plaintiff and failure to perform by the defendant, and the second upon an account annexed. The plaintiff's counsel stated at the trial that both counts were for the same cause of action. *Held*, that

(1) The second count must be assumed to contain all necessary allegations to render the defendant liable upon any common count;

(2) Although the two counts were stated to be for the same cause of action, the allegations of the first count were not incorporated into the second count so that the plaintiff was barred from recovery unless it showed that it had performed completely all that it was obliged to perform under the contract;

(3) The contract was not an entire contract, but was so far divisible as to permit recovery by the plaintiff, under the second count, of the commissions due at the time it was terminated.

At the trial together of cross actions by the parties to a contract, each party contending that the other had committed breaches thereof, the defendant rested at the close of the plaintiff's evidence in the first action. Thereafter that defendant, who also was plaintiff in the second action, offered further evidence in support of his contention in the second action. The trial judge submitted the first action to the jury under instructions that the plaintiff could recover only if they found that he had not committed any unjustifiable breach of the contract;

and ordered a verdict for the defendant in the second action subject to the exception of the plaintiff therein. The jury found for the plaintiff in the first action. *Held,* that

(1) There being evidence of the liability of the defendant in the second action, it was error to order the verdict for that defendant;

(2) The error could not be said not to have been prejudicial to the plaintiff in that action, whose exception must be sustained: since he had introduced further evidence in the second action after resting in the first action, it could not be said as a matter of law by this court that the jury would have reached the same conclusion in the second action as they had in the first;

(3) In the circumstances, a verdict for the plaintiff for nominal damages could not properly be ordered by this court in the second action.

CROSS ACTIONS OF CONTRACT. Writ in the first action in the Municipal Court of the City of Boston dated April 8, 1927; and that in the second action in the Superior Court dated April 23, 1927.

Upon removal of the first action to the Superior Court, the actions were tried together therein before *Walsh,* J. There was evidence that, in the last week in December, 1926, The Waltham Bleachery and Dye Works ceased to furnish Clark-Rice Corporation with daily reports and, ignoring Clark-Rice Corporation entirely, "came into the market" and solicited customers for business. Other material evidence, rulings requested and refused and portions of the judge's charge to the jury are stated in the opinion. The defendant in the first action rested at the close of the plaintiff's evidence. The judge thereupon denied a motion by the defendant that a verdict be ordered in its favor. After further evidence for the plaintiff had been received in the second action, the judge ordered a verdict for the defendant therein. The jury found for the plaintiff in the first action in the sum of $1,193. The Waltham Bleachery and Dye Works alleged exceptions in both actions.

*S. L. Kaplan,* for The Waltham Bleachery and Dye Works.

*J. W. Allen,* (*E. H. Abbot* with him,) for Clark-Rice Corporation.

SANDERSON, J. These are cross actions of contract, tried together, arising out of alleged breaches of an agreement

executed in New York on January 1, 1926. It provided that the Clark-Rice Corporation, organized under the laws of that State and hereinafter called the Corporation, was to act as sole representative or soliciting agent for The Waltham Bleachery and Dye Works, a Massachusetts corporation, hereinafter referred to as the Bleachery, for the purpose of soliciting for it the bleaching, dyeing and finishing of cotton piece goods from all its existing converter customers, of soliciting new accounts for the company, and of using its best efforts to procure such business as the Bleachery was in a position to handle at prices and under terms and conditions to be approved by the Bleachery, which reserved the right to elect to accept or reject any business offered. The Bleachery agreed that it would employ the Corporation for the period of three years from January 1, 1926, and would pay it the stipulated commissions upon all existing accounts and upon any new accounts procured by the Corporation, on the fifteenth of the month following the month in which the finishing bills were rendered to customers. The Bleachery guaranteed that the commissions would amount to not less than $10,000 a year, and agreed to pay the guaranteed commissions at the rate of at least $833.33 on the first of each month to be credited against the total commissions payable on the fifteenth of the same month. The first of these guaranteed payments was to be made on the first of February, 1926. The Bleachery was to render to the Corporation duplicates of all statements rendered to the Corporation's customers, so that the Corporation would have full knowledge of all business done between the Bleachery and such customers. The Corporation was to pay its own travelling and office expenses, with an exception not material to this decision.

On November 30, 1926, a new corporation was organized under the name "James G. Clark, Inc." to carry on the business which had been conducted by the Corporation. On December 1, 1926, at a meeting of the board of directors of the Corporation, it was voted that the president, secretary and treasurer be authorized and directed to take all necessary steps for a dissolution of the Corporation in accordance with § 105 of the New York stock corporation law. On the same

day the holders of all outstanding stock entitled to vote on dissolution certified in accordance with the provisions of that law that the Corporation "elects to dissolve." The statute referred to authorizes dissolution without judicial proceedings by publication of notice and filing a certificate of dissolution with the Secretary of State, and provides that the corporation, by its board of directors, shall have "power to carry out its contracts," that the "corporation shall continue for the purpose of paying, satisfying and discharging any existing liabilities or obligations . . . and may sue and be sued in its corporate name."

On December 2, 1926, James G. Clark, treasurer of the Corporation, wrote the Bleachery that he had entered into an obligation to take over the lease held by the Corporation, and the telephones, and had personally obligated himself to the selling staff and employees of the office, and asked the Bleachery to sign an agreement enclosed which, if signed, would substitute James G. Clark, Inc. as the contracting party in the place of the Corporation. The proposed agreement was not executed. On December 29, 1926, the Corporation sent a letter to one Flint, who on December 21, 1926, became the largest stockholder of the Bleachery, stating that it had been unable to get a decision of the question of continuing its representation as soliciting agent of the Bleachery, and asking that its resignation, effective as of December 31, 1926, be accepted. By letter dated December 31, 1926, it notified the Bleachery to the same effect and enclosed a copy of the letter of December 29 to Flint. On January 7, 1927, the certificate of dissolution of the Corporation was filed in the office of the Secretary of State of New York.

The action against the Bleachery was brought first. In it the Corporation seeks to recover (1) minimum guaranteed commissions of $833.33 for the month of December, 1926, with interest from January 1, 1927, the date of demand; (2) excess commissions of $277.08 earned by the Corporation for the month of November, 1926, payable December 15, 1926, with interest; and (3) excess commissions of $71.62 for the month of December, 1926, payable January 15, 1927, with interest. The verdict for the plaintiff would seem to

have been based upon the amount of the first two items and interest. The first count sets out the written contract, and alleges performance by the Corporation of all obligations by it to be performed under the agreement and neglect and refusal to perform by the Bleachery. The second count is to recover for the same items upon an account annexed. Counsel for the Corporation stated at the trial that both counts were for the same cause of action. The defendant in answer, after making a general denial, set up the defences of payment, full performance of the contract on its part, and wilful breach of contract on the part of the plaintiff by dissolving its corporate existence and terminating the agreement. In this case the defendant rested at the close of the plaintiff's evidence, and excepted to the denial of its motion for a directed verdict.

In the action against the Corporation the Bleachery sought to recover damages because of the defendant's breach of contract in dissolving its corporate existence and resigning as soliciting agent. The answer in that case was a general denial and payment; and the defence was set up that if the corporate existence was dissolved and the defendant resigned as agent these things occurred after material breaches by the plaintiff, which entitled the defendant to treat the contract as wrongfully terminated. The defendant's motion for a directed verdict, made at the close of the evidence, was granted subject to the plaintiff's exception.

Evidence was introduced to prove that the total amount of the commissions due the corporation on sales during the month of November, 1926, was $1,110.41; that $833.33 had been paid thereon as minimum commission, leaving a balance of $277.08 for that month. The parties agreed that according to the contract the latter sum was payable December 15, 1926. The testimony also tended to prove that the total commissions due the Corporation for the month of December, 1926, amounted to $904.95, none of which had been paid. The guaranteed minimum commission due December 1, 1926, for November was not paid until December 22, 1926.

The exception to the exclusion of the question asked in cross-examination of Clark, who in 1926 was treasurer of the

Corporation, whether some of the business obtained by the Corporation was given to competitive bleacheries, cannot be sustained. The witness had already testified that during 1926 the Corporation represented other competing bleacheries and solicited business for them. The contract gave an exclusive agency to the Corporation, but it did not provide that the Corporation should not act as agent for others, and the mere fact that it gave business to others would not be a violation of its duty to the Bleachery or prove a breach of contract. The Bleachery was not entitled to this testimony as a matter of right, and in its exclusion no wrongful exercise of discretion is shown.

The Bleachery, in a series of exceptions, objected to the admission of evidence relating to the organization of the new corporation, to its carrying on at the same place with substantially the same employees and organization the business which had been carried on by the Corporation, and to the fact that there was correspondence with the Bleachery in respect to the business which the new corporation proposed to do. The testimony that the service offered to the Bleachery by the new corporation would be performed by the same employees who had been acting for the old Corporation was competent in mitigation of damages in the action brought by the Bleachery. The evidence tended to prove that the Bleachery could obtain from the new corporation substantially the same services for which it had contracted. *Hall* v. *Paine*, 224 Mass. 62, 65.

Exceptions were saved to the admission in evidence of certain statements made by one Walsh to the treasurer of the Corporation, of a letter from Walsh to the Corporation and a letter in reply dated respectively December 17 and December 20, 1926. There was evidence that, at the time the letters were written and the conversations occurred, Walsh was agent of the Bleachery, supervising details of manufacture, supervising and controlling the sales, and in general authorized to conduct the business. His title appeared as agent on the stationery of the Bleachery and he was described by one witness as manager of the works. He had been in the habit of deciding questions arising under the

contract.   The evidence would justify a finding that he was an employee with authority to deal with the Corporation concerning the sales agency, a matter which to some extent at least seems to have been under his supervision and control. Protests concerning such matters properly might be made to him, or a proposition be submitted for continuing sales service for the Bleachery by a new corporation.   *Squire* v. *New York Central Railroad,* 98 Mass. 239, 248.   *Markey* v. *Mutual Benefit Life Ins. Co.* 103 Mass. 78, 92.   It was not necessary to show that he was an officer of the Bleachery or authorized to execute a contract with the new corporation to make the testimony competent.   In many respects the statements attributed to Walsh to which objection was made were the same in substance as testimony given by him or otherwise in the case without objection.   In the admission of the letters and statements no reversible error is shown.

The Bleachery's exception to a question calling for Clark's reasons for writing the letter of resignation in behalf of the Corporation, dated December 29, 1926, but to be effective December 31, 1926, must be overruled.   Any fact known to the witness tending to show breaches of contract by the Bleachery before the letter was written was competent. *Nash* v. *Minnesota Title Ins. & Trust Co.* 163 Mass. 574. He was not precluded from putting in evidence reasons not stated in the letter.   The objection that the question was too broad cannot be made for the first time in this court. *Commonwealth* v. *Hogan,* 11 Gray, 312, 313.   *Gagnon* v. *Sperry & Hutchinson Co.* 206 Mass. 547, 557.   The irresponsive part of the answer objected to in exception 16 seems to have been struck out.   The exceptions numbered 17 and 18 relate to an answer in cross-examination not wholly responsive to the question put but, so far as appears, not objected to on that ground at the trial.   The answer implied that Walsh, an officer of the Bleachery, gave the witness information as to terminating the contract.   It appeared, however, by later answers, that no officer gave such information and that the witness knew Walsh was not an officer. Moreover, the objection that an answer is not responsive cannot be made for the first time in this court.   *Gagnon* v.

*Sperry & Hutchinson Co., supra.  Mielke* v. *Dobrydnio,* 244 Mass. 89, 91.

The nineteenth and forty-fourth exceptions relate to reading into the record certain pencil memoranda from the ledger of the Corporation on the ground that they were not shown to have been entries in the usual course of business.  The treasurer read from an account book, and a copy of the account was later admitted without objection and marked as an exhibit.  The witness testified that this exhibit contained all the payments received by the Corporation from the Bleachery.  After a part of the items had been read to the jury the attention of the witness was directed to the pencil memoranda appearing on the same page of the ledger and on the exhibit.  These entries were in the book when audited. Upon objection being made to the reading of the pencil memoranda, the judge said, in substance, that the exhibit was already in evidence and it is assumed that the items are entries in a book kept in the ordinary course of business.  No objection having been made to the exhibit when admitted, there was no error in refusing to strike out the part of it in pencil.  *Matthews* v. *New York Central & Hudson River Railroad,* 231 Mass. 10, 18.

The exceptions to testimony tending to prove that Flint gave directions to employees, which were obeyed, and that he also engaged in other activities in and about the factory must be overruled.  This evidence was introduced to prove that Flint had authority to speak for the Bleachery.  Testimony was introduced without objection to the effect that on December 21, 1926, a sale of a majority of the capital stock of the Bleachery was made to Flint, and that on the same date all the officers and directors resigned and others were elected to fill their places; that when representatives of the Corporation made an effort to get the treasurer of the Bleachery then in office to sign an agreement substituting the James G. Clark, Inc. for the Corporation as party to the contract, he said that one reason for not signing was that negotiations were pending for sale of stock and he wanted to leave the new management free to act in the matter; that he wanted to put the matter up to Flint as the largest stockholder before taking

any action; and later, he said one reason for not signing was that Flint thought it would be better to sell his own product direct, and that Flint was not in favor of "continuing the representation." Walsh testified without objection that Flint had final authority; that he was the only one who could make the decision whether the Bleachery would agree to substitute the new corporation for the old in the contract. This was evidence from which the jury could infer that Flint so far controlled the policy of the Bleachery that he was to decide in the first instance whether the contract should be continued with the new corporation. The testimony concerning Flint and his activities which remained in the case could not have prejudiced the substantial rights of the Bleachery.

The testimony of the witness Atwater to which exception was saved was substantially the same as other evidence in the case without objection, and, if it be assumed that he was not authorized to speak for the Bleachery, the rulings concerning the interrogatories to him do not disclose reversible error. "The defendant fails to show that it was prejudiced by the introduction of evidence, which it contended at one time was irrelevant and which afterwards when introduced in another form it did not oppose though covering the same subject." *Morrison* v. *Lawrence,* 186 Mass. 456, 458.

The witness Walsh, having stated in cross-examination that he did not know before December 31 that the Corporation was going to resign, was asked whether he went to New York to meet customers because of the emergency caused by the termination of the agency of the corporation on December 31, and answered "Yes," and added, "That termination was coming from the Waltham Bleachery, not from the Clark-Rice Corporation." He was then asked whether the Bleachery knew prior to December 31 that the Corporation was going to resign, and answered that it did not but that it knew the Bleachery was not going to continue. When in reply to later questions he testified that he did not mean that officers of the Bleachery knew that the Bleachery was not going to continue but that the owner of the plant had this knowledge, the Bleachery moved to strike out the testimony as to the

knowledge of the Bleachery and excepted to the refusal of the judge to grant its request. The original question made no reference to officers; the answers were in reply to questions asked in cross-examination, and no reversible error appears in the ruling of the judge on this request. See *Del Visco* v. *General Electric Co.* 235 Mass. 415, 417.

It was not disputed that by letter dated December 31, 1926, the Bleachery sent notice to its customers containing this statement. "Having terminated our connection with Clark-Rice Corporation, formerly Selling Agents for the Waltham Bleachery & Dye Works, the new management has adopted the policy of selling direct to the trade, rather than through selling agents."

The judge ruled that the dissolution of the Corporation subsequent to December 31, 1926, would not excuse the Bleachery from payment of any balance of commission due December 15, 1926, in respect to November, 1926, and added, in substance, the statement that the vote to dissolve not becoming effective as a legal dissolution until January, 1927, that standing alone was not sufficient to preclude the Corporation from recovery if it had satisfied the requirements of law in other respects. He refused to rule that upon the passage of the vote to dissolve by the Corporation its right to performance of the contract by the Bleachery ceased. No evidence was offered to show that a vote to dissolve or the filing of the certificate on January 7, 1927, disabled the Corporation to perform its contract or constituted a refusal to perform. A corporation dissolved under the statute of New York is expressly given the right to carry out its contracts. See *New York* v. *New York & South Brooklyn Ferry & Steam Transportation Co.* 231 N. Y. 18. The judge in his charge stated that, if the Bleachery solicited business of its customers direct and sent word through its representatives that it was going to do that, the jury might take that into consideration in deciding whether or not such conduct tended to prove a breach of contract; that for the Bleachery to solicit customers in that way while the contract was in existence and before there had been a breach of it, with the intention not to credit or pay the plaintiff for the work thus solicited

by the Bleachery, would constitute a breach of contract if done before December 31. The ruling thus guarded is free from reversible error. Soliciting business by the Bleachery on its own account without recognizing the plaintiff's rights would be an act in violation of a vital term of the contract giving the sole agency in that matter to the Corporation. There was evidence that the representatives of the Bleachery in going into the market for business ignored the Corporation entirely, and that at about the same time the Bleachery discontinued the practice of sending daily reports to the Corporation. These circumstances were of some significance as indicating a purpose to change the business relationship with the Corporation and not to credit the Corporation with the business obtained by the Bleachery by direct solicitation. By the contract the Corporation was not only to receive a guaranteed minimum compensation but was to be left free under an exclusive agency to increase its compensation above that minimum. It was for the jury to say whether in all the circumstances the Bleachery solicited business in violation of the rights of the Corporation under the contract.

The Bleachery excepted to the refusal of the judge to rule (1) that if the second count is regarded as a *quantum meruit* the plaintiff cannot recover if it voluntarily and without just cause refrained from performing the contract; (2) that one who fails without just cause to perform his own contract cannot recover on the contract or on a *quantum meruit*; (3) that, even though the compensation was payable in monthly instalments, if before the Corporation had itself performed its part of the contract it without just cause voluntarily abandoned the contract, it cannot recover for work and labor performed and furnished up to the time of abandonment; and (4) that a wilful default in performance of a contract, whether the default goes to the essence of the whole contract or not, bars a recovery on the contract by the party so defaulting. The judge gave the Bleachery the benefit of these requests by ruling, in substance, that the Corporation could not recover if it voluntarily or without just cause failed to perform its part of the contract.

The Bleachery rested at the close of the plaintiff's evidence in the first case and excepted to the refusal of the judge to allow its motion for a directed verdict. The motion was rightly denied if there was evidence upon which the jury could have found for the plaintiff on either count. *West* v. *Platt,* 127 Mass. 367, 371.

The evidence that the Bleachery failed to pay commissions when due in December (see *National Machine & Tool Co.* v. *Standard Shoe Machinery Co.* 181 Mass. 275, 278; *Parrot* v. *Mexican Central Railway,* 207 Mass. 184, 197), that it had decided to discontinue the agency of the Corporation and that before the end of December its agents went to the customers of the Corporation and solicited business direct, in the circumstances disclosed made it a question of fact for the jury whether the Corporation was justified because of conduct of the Bleachery in resigning as soliciting agent to take effect December 31, 1926. A count on an account annexed is assumed to contain all necessary allegations to render the defendant liable upon any common count. The admission that this count is for the same cause of action as the first does not incorporate into it the allegations of the first count, and there might be recovery under it without proof that the Corporation had completely performed all that was to be done by it under the contract. *Massachusetts Mutual Life Ins. Co.* v. *Green,* 185 Mass. 306, 310. This is not a contract to be performed for an entire price, but the stipulations as to time, terms and amounts made it so far severable or divisible in its operation that the Corporation might recover under the count on an account annexed the instalments due at the time the contract was terminated. *Badger* v. *Titcomb,* 15 Pick. 409, 413. *Denny* v. *Williams,* 5 Allen, 1, 4. *Barrie* v. *Earle,* 143 Mass. 1, 4, 5. *Mark* v. *Stuart-Howland Co.* 226 Mass. 35, 43. *Tipton* v. *Feitner,* 20 N. Y. 423, 427, 428, 429. Williston, Contracts, §§ 861, 870, 871, 1028, 1363. Under the rulings the Corporation was permitted to recover only in case the jury found that it committed no breach of the contract and was justified in resigning because of breach of contract by the Bleachery. The facts in the case at bar dis-

tinguish it from *Homer* v. *Shaw,* 177 Mass. 1.   *Frati* v. *Jannini,* 226 Mass. 430.   *Beacon Tool & Machinery Co.* v. *National Products Manuf. Co.* 252 Mass. 88.

The testimony presented issues of fact on the question of liability in each case, and the judge erred in directing a verdict for the defendant in the action brought by the Bleachery.   This error cannot be held to have become non-prejudicial because of the verdict in the case submitted to the jury, even though under the rulings in that case the jury must have found that the Corporation was not liable for the breaches of contract upon which the Bleachery relies as the basis of its action.   The Bleachery, after resting in the action brought by the Corporation, introduced further evidence in its own case, and we cannot say as matter of law that the jury would have reached the same conclusions upon the vital issues in the second case as they reached in the case submitted to them.

Nor can the contention be maintained that upon the testimony in the case brought by the Bleachery this court may now order a verdict for nominal damages for the plaintiff.   We need not decide whether the evidence would support a verdict for substantial damages, for if we assume that such a verdict could not have been supported, we cannot say as matter of law that the jury would have found for the Bleachery on the question of liability.   It may well be that upon a new trial the evidence as to damages would not in all respects be the same as that which appears in this record.

In the action of the Corporation against the Bleachery, #192821, the exceptions are overruled; and in the action of the Bleachery against the Corporation, #193207, the exceptions are sustained.

*So ordered.*