COMMONWEALTH *vs.* ROBERT F. LUNDIN.

Plymouth.   October 2, 1950. — December 6, 1950.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & WILLIAMS, JJ.

*Practice, Criminal,* Disclosure of evidence of Commonwealth; Exceptions: whether error harmful; Discretionary control of evidence; New trial; Findings by judge. *Evidence,* Admissions and confessions; Relevancy and materiality; Opinion: expert; In rebuttal. *Error,* Whether error harmful.

One indicted for murder was not entitled as of right, before trial, to have the district attorney ordered to furnish the defendant's counsel "a full and complete copy, memoranda, notes, or any other written or oral evidence of any confession made by the defendant."

A confession by the defendant was not rendered inadmissible at a murder trial by the absence of any warning to him, before he made the confession, that he was not obliged to talk and that what he said might be used against him.

Commonwealth *v.* Lundin.

The evidence at a murder trial did not show that a finding by the trial judge, that a confession made by the defendant was voluntary, and submission of the confession to the jury under appropriate instructions were erroneous on the alleged ground that it was not voluntary by reason of the defendant's physical condition at the time he made it.

Evidence that a defendant on trial for murder by shooting with a revolver had no license to carry firearms when he purchased the revolver was relevant to show that he premeditated an unlawful use of it; and no error was shown in the admission of such evidence coupled with appropriate instructions to the jury.

Error prejudicial to the defendant in a criminal case was not shown by a refusal of the judge to strike out, in cross-examination of an expert witness for the defendant, a certain "line of questioning" by the district attorney directed at the credibility of the witness, where, even if the questioning was improper, the judge's instructions to the jury respecting it accomplished substantially the same result as would have been accomplished by striking it out.

At the trial of a murder case in which the defence was insanity, there was no error in permitting the district attorney to ask certain questions of expert witnesses for the Commonwealth calling for their opinions as to the defendant's capacity to distinguish between right and wrong on particular occasions.

The record of a murder trial disclosed no error in permitting the district attorney to ask an alienist called by the Commonwealth in rebuttal whether a medical term employed by a medical expert testifying for the defendant was a well recognized term in the State mental institutions.

In a murder case wherein the defence was insanity, no abuse of discretion was shown in the denial of a motion for a new trial based on alleged newly discovered evidence, cumulative of evidence at the trial, describing from laymen's points of view the appearance of the defendant at or about the time of the murder as "dangerous," "crazy," "indifferent to everything," and dazed.

A judge hearing a motion for a new trial in a criminal case is not required to make findings of fact.

On a motion for a new trial of a criminal case on the ground of newly discovered evidence, a request for a ruling, that "The test is whether honest and intelligent men could reasonably differ as to the ultimate conclusion to be drawn from the new evidence taken in connection with the old evidence," was properly refused as not being an accurate statement of the law.

INDICTMENT, found and returned on February 7, 1950.

The case was tried in the Superior Court before *Smith,* J.

*G. E. Shulman,* for the defendant.

*B. W. Flynn,* Assistant District Attorney, for the Commonwealth.

WILLIAMS, J. The defendant was found guilty by a jury

of murder in the first degree of one Muriel Beal. The case is before us after sentence on the defendant's appeal accompanied by an assignment of errors, a summary of the record, and a transcript of the evidence. G. L. (Ter. Ed.) c. 278, §§ 33A–33G, as amended by St. 1939, c. 341.

There was evidence that Muriel Beal, a young woman twenty-six years of age, was shot by the defendant on Main Street, one of the principal business streets of Brockton, at about 12:15 P.M. on Monday, November 21, 1949. Miss Beal was standing on the sidewalk looking at the bulletin board in the window of the Brockton Enterprise-Times, a local newspaper, when the defendant approached from behind and shot at her three times. The weapon used was a thirty-eight calibre Colt revolver. The first bullet struck the door of the newspaper building and dropped on the sidewalk. The second bullet, fired with the revolver held against or close to the back of Miss Beal, passed through her lung and heart, causing almost instant death. The third bullet, fired as the victim lay on the sidewalk, shattered a bone in her right leg. After the shooting, the defendant walked down an alleyway near by, threatened several persons in the vicinity with his revolver, and then attempted to commit suicide by shooting himself in the chest. The shot resulted only in a superficial wound but caused a considerable loss of blood. The defendant then threw away his revolver and was immediately arrested by the police. He was taken in a police automobile to the Brockton Hospital and there given treatment for shock, a transfusion of blood plasma, and a saline intravenous injection. While in the automobile, he orally admitted the shooting to the police and, while in the hospital, made an additional statement of like nature. The statement made in the hospital was written out by a police officer in the defendant's presence, was read to him, and after being typewritten, within a short time was presented to the defendant for his signature. He was receiving a blood transfusion in his right arm at the time and therefore signed the written statement by making a cross with his left hand.

The defendant does not deny the facts of the shooting. His defence is insanity. It is his contention that, from a time shortly before the shooting when he saw Miss Beal walking on Main Street, he has no recollection of his subsequent acts. He testified at the trial that at one time he had been engaged to marry Miss Beal and that the engagement had been broken by her about a year before. Since then he had been mentally upset and had contemplated suicide. A few weeks before November 21 he purchased a sheath knife with the thought of using it on himself in the presence of Miss Beal. He bought the revolver on the Friday before the shooting and carried it on his person on the morning of November 21. He saw Miss Beal on Main Street and crossed the street to the side on which she was walking toward the newspaper building. From that time he did not remember what happened until he found himself in the hospital on the following Tuesday morning.

There was evidence of statements made by him before the shooting to the effect that on November 5 while driving a truck on Main Street he saw Miss Beal crossing the street in front of him and that he had the "urge" to run her down but that he restrained himself because the truck which he was driving did not belong to him. He also said that on the same evening, being armed with the sheath knife, he went to the vicinity of Miss Beal's home in Whitman and waited outside of the house for about an hour and a half with the intention to use the knife on her.

A motion for a new trial alleging that the verdict was against the evidence, the weight of the evidence and the law and that the defendant was in the possession of newly discovered evidence was denied by the trial judge.

The defendant has filed seventeen assignments of error. Assignment 1 is to the denial of his motion filed before the trial that the district attorney "be ordered to furnish to counsel for the defendant a full and complete copy, memoranda, notes, or any other written or oral evidence of any confession made by the defendant to the district attorney, any representative of the district attorney, or any police

officer, or any other person or persons to whom the defendant is alleged to have made a confession either orally or written." It is settled that the defendant was not entitled to this evidence. *Commonwealth* v. *Giacomazza*, 311 Mass. 456, 462. *Commonwealth* v. *Galvin*, 323 Mass. 205, 211.

Assignments 2 to 6, inclusive, relate to the admission of the alleged oral and written confessions made by the defendant to the police while in the automobile immediately following the shooting and later on the same day while in the hospital. It is contended that these confessions were not voluntary because made while the defendant was in a state of shock due to his wound and loss of blood and that they were not admissible because he was not warned that he was not obliged to talk and that what he said might be used against him. No medical evidence was offered as to the physical condition of the defendant at the time of these confessions. It is settled that no warning to a defendant is necessary although, as said in *Commonwealth* v. *Szczepanek*, 235 Mass. 411, 414, if such warning or caution is given, it tends to support a contention that the confession thereafter made is voluntary. The issue as to whether the confessions in question were voluntary was one of fact. The judge heard the evidence as to the confessions in the absence of the jury, found them to have been made voluntarily, and later submitted them for the consideration of the jury under careful and appropriate instructions. *Commonwealth* v. *Dascalakis*, 243 Mass. 519, 522. *Commonwealth* v. *Buck*, 285 Mass. 41, 47. *Commonwealth* v. *Galvin*, 323 Mass. 205, 215. The jury must be taken to have followed those instructions and the evidence would warrant them in finding "that the physical and mental condition of . . . [the defendant] at the time in question was not such as to deprive him of the faculty of consciousness of the physical acts performed by him, of the power to retain them in his memory, or of the capacity to state them with reasonable accuracy." *Commonwealth* v. *Sheppard*, 313 Mass. 590, 604–605. See also *People* v. *Miller*, 135 Cal. 69; *Green* v. *State*, 96 Md. 384; *State* v. *Horner*, 139 N. C. 603. There was no error.

Assignment 7 is to the refusal of the judge to strike out the answer of a lieutenant of the Brockton police who testified that a search of the records of the department disclosed that no license to carry firearms had been issued to the defendant. The fact that the defendant had no right to carry the revolver when he purchased it had some tendency to show that he premeditated its unlawful use. The judge instructed the jury that the commission of the offence of carrying the revolver was not to be considered by them as evidence of the commission of the crime for which the defendant was being tried. There was no error. See *Commonwealth* v. *Simpson,* 300 Mass. 45, 56, and cases cited.

Assignments 8 and 9 have not been argued and are treated as waived.

Assignment 10 relates to the refusal of the judge to strike out the entire "line of questioning" of the defendant's medical expert, Dr. Berk, on cross-examination, so far as directed to his credibility. Dr. Berk had testified that in his opinion the defendant was insane. The district attorney by leading questions attempted to recall to the memory of the witness the fact that in 1932, when a witness in a certain civil case, he had testified that a boy was feeble minded although there was evidence that the boy had passed several arithmetic tests with perfect marks. The district attorney, during his examination, held in his hand and referred to what purported to be a transcript of the evidence in that case. See *Commonwealth* v. *Russ,* 232 Mass. 58, 81. The doctor stated that he did not remember the case. The judge then instructed the jury that they should not consider any references to the transcript, and that nothing had been shown in the way of inconsistent statements to affect the credibility of the witness. Assuming without deciding that the attempted introduction of this collateral matter was improper, see *Commonwealth* v. *Schaffner,* 146 Mass. 512, 515; *Campbell* v. *Ashler,* 320 Mass. 475, 481, we think that no harm was caused to the defendant. The judge's instructions accomplished substantially the same result that would have been accomplished by striking out the "line of questioning."

Assignment 11 is to the admission of a hypothetical question of the district attorney to Dr. Lindberg, an alienist called in rebuttal as a witness for the Commonwealth. Dr. Lindberg was one of two physicians who had examined the defendant previous to the trial under the provisions of G. L. (Ter. Ed.) c. 123, § 100A, as amended. See *Commonwealth v. Millen*, 289 Mass. 441, 481. He had testified without objection that from his examination he believed that the defendant was of average intelligence and that, assuming the truth of the defendant's statement that when he saw Miss Beal on the street he had "the urge" to run her down with his truck, he then had the capacity to distinguish between right and wrong. The question to which objection was made and exception taken was whether the defendant had that capacity when he went to the house of Miss Beal armed with the sheath knife. There was no error in allowing the witness to testify. We said in *Commonwealth v. Noxon*, 319 Mass. 495, 538, quoting from *Greene v. Boston Elevated Railway*, 207 Mass. 467, 477, "If the presiding judge 'thinks that the jury will get more help upon a matter which is the subject for expert testimony, by allowing the expert to give his opinion upon separate matters than by answering a hypothetical question involving all the facts in the case, it is within his discretion to do so.'"

Assignment 13 is based on an exception to a similar question to the Commonwealth's medical expert, Dr. Glass, superintendent of the Taunton State Hospital, who had examined the defendant after the defendant had been committed to the hospital for a ten day period of observation. There was no error in permitting the inquiry nor the question which is the subject of assignment 14 as to whether at the time of the shooting in the opinion of the witness the defendant had the capacity to distinguish between right and wrong.

Assignment 12 is to the admission of a question by the district attorney to Dr. Lindberg as to whether the term "schizo affective psychosis" employed by Dr. Berk in describing the disease from which he said the defendant was

suffering was a well recognized term in the State mental institutions. The witness answered, "It is not a term used in classification in the State hospitals." It was pertinent for the district attorney to inquire of the Commonwealth's expert if there was such a disease known to the medical profession as that named by Dr. Berk and, if there was such a disease, what were its characteristics. The question put to the witness did not go that far, but, as all three medical witnesses — Berk, Lindberg and Glass — were or had been employed in Massachusetts State hospitals, the judge was not wrong in admitting what he may have thought to be a preliminary inquiry by the district attorney as to the nature of the disease named by Dr. Berk.

Assignment 15 relates to the denial of the defendant's motion for a new trial. It is settled that the allowance of such a motion depends on the exercise of a wise discretion by the trial judge. *Davis* v. *Boston Elevated Railway,* 235 Mass. 482. The defendant presented two matters of alleged newly discovered evidence supported by affidavits. In the first it was stated that one Fencer, who had testified at the trial that "he was not close enough [at the time of the shooting] to the defendant to get a clear view of the defendant's face," had, previous to the trial, said "that he could see everything clearly; that the defendant appeared dangerous; that the defendant looked crazy; that the defendant seemed indifferent to everything." In the second affidavit one Berkson stated that he saw the defendant on the morning of the shooting and that he appeared in a daze. This evidence does not impress us as being of sufficient importance to require the allowance of the motion. As was said in *Davis* v. *Boston Elevated Railway*, 235 Mass. 482, 496, it was not of such a character as "to afford a probability that it would be a real factor with the jury in reaching a decision." In describing the appearance of the defendant from the point of view of lay witnesses, it was merely cumulative to much of the testimony which had been introduced at the trial. There was no abuse of discretion by the judge.

Assignment 16 is to the refusal of the judge on the motion for a new trial to make findings of fact. As was stated in *Commonwealth* v. *Galvin*, 323 Mass. 205, 220, "The judge was not required to make findings of fact."

Assignment 17 relates to the denial of the defendant's requests numbered 1 and 6 for rulings of law on the hearing for a new trial. Number 1, reading "On all the evidence the motion should be granted," could not have been given, and number 6, stating "The test is whether honest and intelligent men could reasonably differ as to the ultimate conclusion to be drawn from the new evidence taken in connection with the old evidence," was not an accurate statement of the law. *Commonwealth* v. *Galvin*, 323 Mass. 205, 218–220.

In accordance with the mandate of G. L. (Ter. Ed.) c. 278, § 33E, as amended by St. 1939, c. 341, we have considered the law and the evidence in the case and are satisfied that no reason exists for requiring a new trial.

*Judgment affirmed.*