COMMONWEALTH *vs.* WILLIAM R. TAYLOR
(and a companion case against the same defendant).

Suffolk.    May 7, 1951. — July 26, 1951.

Present: QUA, C.J., LUMMUS, WILKINS, SPALDING, & WILLIAMS, JJ.

*Homicide. Robbery. Practice, Criminal,* Examination of jurors; Exceptions: whether error harmful. *Jury and Jurors. Constitutional Law,* Due process of law. *Evidence,* On redirect examination; Relevancy and materiality; Conversation; In rebuttal; Opinion: expert; Irresponsive answer; Cumulative evidence; Corroborative evidence. *Witness,* Redirect examination. *Error,* Whether error harmful.

A judge who propounded the customary statutory questions to prospective jurors at a criminal trial did not deny the defendant due process of law nor otherwise commit error by refusing to propound further questions or to allow counsel for the defendant to examine the prospective jurors.

Certain testimony by a witness for the Commonwealth at a criminal trial was admissible on redirect examination to negative a matter suggested by the cross-examination.

Any error in the exclusion of a question asked in cross-examination of a witness for the Commonwealth at a criminal trial was cured by subsequently permitting the witness to answer the same or a similar question.

The defendant at a criminal trial was not harmed by the admission of certain evidence, even if immaterial, where he subsequently corroborated such evidence in his own testimony.

After the defendant at a criminal trial, in cross-examination of a witness for the Commonwealth, had raised the matter of a conversation between the witness and another, the Commonwealth was entitled to have the entire conversation in evidence.

The admission of a certain hypothetical question to an expert witness for the Commonwealth at a criminal trial was not error in view of the phraseology of the question and instructions given to the jury concerning it.

Allowing to stand an irresponsive answer to a question asked in cross-examination of a witness for the Commonwealth at a criminal trial disclosed no error where the answer was competent evidence and the witness later gave testimony responsive to the question.

Certain beads found in the apartment of a woman were admissible in the circumstances at a trial for her murder to show that a body found in the apartment was hers.

There was no prejudicial error at a murder trial in the admission in evidence of a statement by the victim in a letter which, although hearsay, was merely cumulative evidence.

Error in the admission at a criminal trial of testimony by a witness for the Commonwealth as to a conversation between him and the defendant's wife, which was hearsay and had not been raised by the defendant in cross-examination of the witness, was not prejudicial to the defendant where subsequently the same conversation was testified to by another witness for the Commonwealth without objection and by the defendant's wife as a witness for him.

Certain testimony by witnesses for the Commonwealth was admissible at a criminal trial to corroborate other testimony negativing an assertion by the defendant as to his whereabouts shortly before the commission of the crime.

Evidence at the trial of indictments for murder and robbery warranted findings that a body found in a closet in an apartment was that of a woman who was the tenant of the apartment, that the defendant had murdered her several days before on a day on which he assisted in moving her effects to the apartment and was later seen entering and leaving the apartment building, and that at the same time he robbed her of a radio which he later pawned.

At the trial of indictments for murder and robbery of a certain woman, there was no error in the admission in evidence of a radio pawned by the defendant several days after the murder, a dress found on a body discovered in the apartment of that woman and alleged to be her body, and articles found in the apartment, all of which were similar to those possessed by the woman.

INDICTMENTS, found and returned on August 14, 1946, and August 16, 1946.

The cases were tried in the Superior Court before *Sullivan,* J.

*W. S. West,* (*J. W. Bailey* with him,) for the defendant.

*Edward M. Sullivan,* Assistant District Attorney, for the Commonwealth.

WILLIAMS, J. The defendant has been found guilty on two indictments; the first charging him with the murder of Agnes Burnett on June 29, 1946, and the second with the robbery from the same Agnes Burnett of a radio on the same day. On the first indictment the verdict was guilty of murder in the second degree and sentence was imposed. In the second case the indictment after verdict was placed on file. The cases were tried together and are before us on the defendant's appeals accompanied by an assignment of errors, applicable to both cases, a summary of the record, and a transcript of the evidence as required by G. L. (Ter. Ed.) c. 278, §§ 33A–33G, as amended by St. 1939, c. 341.

There was evidence substantially as follows. Agnes Burnett was a widow eighty-four years of age living at 49 Newcomb Street in the south end of Boston. On the morning of Saturday, June 29, 1946, she caused her furniture and personal effects to be moved by one Choquette, a truckman, to an apartment which she had rented on the third floor of a nearby apartment house at 978 Harrison Avenue. Choquette hired two colored men, of whom one was the defendant, to assist him in the moving. Among Mrs. Burnett's effects was a table radio, gray in color, its width gradually diminishing near the top by means of lateral setbacks. She was observed listening to it in her new apartment while the three men were bringing up the furniture. The moving was completed about 11:30 A.M. and Mrs. Burnett was left alone in the apartment. The defendant was taken by Choquette to a point near the corner of Washington and Northampton streets where Choquette had found him earlier that morning. At about noon on the same day, Mrs. Burnett was seen approaching the entrance

to No. 978 from the direction of her former apartment. She was accompanied by the defendant who was dressed in coveralls and was carrying a push broom, an ordinary broom and a mop. Mrs. Burnett was wearing a dress patterned with blue and red flowers and a red straw hat. She entered the street door of No. 978 with the defendant. About one half hour later the defendant was seen leaving No. 978 carrying a radio which looked like the one owned by Mrs. Burnett. Later that afternoon the woman who had the management of the premises left a key to Mrs. Burnett's apartment with one Withee, a friend of Mrs. Burnett, who lived on the first floor of No. 978. Twice that evening Withee went upstairs to Mrs. Burnett's apartment with the key, knocked on the door, but received no response. On Sunday, June 30, Withee accompanied by a police officer entered Mrs. Burnett's apartment by means of the key. They found no one there and noticed that a door to a closet was nailed up. There was no mattress on the bed and a trunk was tied up with a rope. Between Sunday and the following Wednesday, July 3, one Miss Flaherty, who lived in the apartment below that of Mrs. Burnett, noticed a strong odor in the building. The weather was warm, the mean temperature between June 29 and July 3 being about seventy-five degrees. On Wednesday Withee went to the police station and returned with police officers. They entered Mrs. Burnett's apartment, pried open the closet door and found therein the dead body of an elderly woman. The body was in an advanced stage of putrefaction. It was clothed in a cotton, red and blue flowered print dress. There were no shoes upon the body. The nose was fractured and on the front of the body below the collar bone were three punctured wounds, two circular and one, which did not penetrate the skin, oblong in shape. The oblong wound measured one fifth of an inch across. In the opinion of the medical examiner the wounds had been produced by a screw driver and had caused the woman's death. The body was that of a plump woman, five feet, eight inches tall, with gray hair. The gall bladder was missing. Two

nails had been driven through the closet door above and below the knob into the casing at an angle of thirty degrees. On the floor of one of the rooms a hammer was found; a handbag and some green rosary beads were on the stove; a red straw hat was on a table; and in the sink were false teeth in a glass of water. Because of the condition of the body it was not shown to Withee who was present at its discovery and it was not viewed by Mrs. Burnett's son and daughter-in-law who later came to Boston from their home in New York. The physical characteristics of the body were those of Mrs. Burnett. Some years before she had undergone a gall bladder operation. The dress on the body was like that which she had been wearing on the morning of June 29 and was like one given to her by her daughter-in-law a year or more before. The straw hat, handbag and rosary beads found in the apartment were similar to those possessed by Mrs. Burnett.

The defendant Taylor was hired by Choquette between nine and nine-thirty on the morning of June 29. Earlier that morning Taylor had gone to Camden Loan Company at 802 Tremont Street and had tried to borrow $10 from one Freedman, the proprietor, saying that he was "broke." Freedman refused to lend him the money as the defendant at that time already had various articles in pawn. The defendant was wearing coveralls. Around 6 P.M. on the same afternoon or evening the defendant returned to the loan company dressed in striped pants. He paid the pawn broker $40 and took away the property which he had in pawn, saying to Freedman, "There is blood on this money." On July 2 he returned and pawned a radio. He received $8 for it. It was a gray metal "Air King" table radio with painted ornaments on the sides and was like in shape and color to the one owned by Mrs. Burnett. An "Air King" radio similar in type, color, and shape had been given to Mrs. Burnett by her son nine or ten years before. On Saturday, July 6, police officers went to the apartment of the defendant at 74 Ruggles Street, found the defendant's wife there, and saw the defendant running from the building across the

back yard. They obtained from Mrs. Taylor some coveralls of a greenish shade which later were admitted by Taylor to be his. In the pocket of the coveralls was a screw driver which was admitted in evidence. Examination by the chemist of the police department disclosed several minute traces of human blood on the coveralls and on the blade of the screw driver. About midnight on July 6, or early in the morning of July 7, the defendant was apprehended in a garage near his home. When the officers appeared he attempted to run.

It was the contention of the defendant that he was not one of the men hired by Choquette on the morning of June 29 and that he did not participate in moving Mrs. Burnett from Newcomb Street to Harrison Avenue. He denied ever having seen Mrs. Burnett. He testified that at the time of the moving he was repairing an automobile for one John Ufie. He also testified that the radio, which he admitted having pawned with Freedman on July 2, was received by him from one Mary Mitlo who had given it to him in part payment for a lady's wrist watch which he had sold her. He gave as his reason for running away when he saw or heard the police officers in his apartment that he was a fugitive from justice from North Carolina out on bail and was afraid that he was being surrendered by his bondsman.

The defendant has filed thirty-one assignments of errors, numbered to correspond with the numbers assigned in the transcript of testimony to the exceptions on which they were based. No assignments of errors have been filed based on exceptions numbered 8, 12, 17, 19, 22, 23, 25, and 36, which are expressly waived. Assignments numbered 4, 5, 6, 7, 9, 10, 16, 18, 20, 21, and 37 have not been argued and are treated as waived. *Commonwealth* v. *Tyler*, 199 Mass. 490, 492. *Commonwealth* v. *Riley*, 210 Mass. 387, 396. *Commonwealth* v. *Lundin*, 326 Mass. 551, 556.

Assignments 1, 2, and 3 involve the right of counsel to question prospective jurors on the voir dire examination and are considered together. Assignment 1 is to the refusal of the judge to permit counsel for the defendant personally to

examine the jurors as to their qualifications. Assignment 2 is to the refusal to put to the jurors the following questions: "1. Have you ever been a member of or connected with the police department of the city of Boston or any city or town? 2. Are you related by marriage with any officer or officers of the police department of the city of Boston? 3. Have you read the newspaper account of the death of Agnes Burnett and the defendant's alleged connection therewith? 4. Have you formed any opinion in regard to this case that would prevent you from giving the defendant a fair trial? 5. Are you conscious of any prejudice or bias on account of the defendant's race or color?" Assignment 3 is to the denial of a motion to have a mistrial declared because of insufficient and inadequate examination of the jurors. The judge propounded to each juror as he was called the customary five statutory questions. See G. L. (Ter. Ed.) c. 234, § 28; c. 278, § 3. There was no error in refusing to permit counsel for the defendant further to interrogate the jurors. That such interrogation by counsel is not matter of right has been settled adversely to the defendant's contention by numerous decisions of this court. The extent of the examination of the jurors by the judge was within his discretion and his ruling as to the proposed additional questions discloses no error. See *Commonwealth* v. *Gee,* 6 Cush. 174, 177–178; *Commonwealth* v. *Millen,* 289 Mass. 441, 475; *Commonwealth* v. *DiStasio,* 294 Mass. 273, 280; *Commonwealth* v. *Lee,* 324 Mass. 714, 717–718; *Commonwealth* v. *McCann,* 325 Mass. 510, 511–512. The rulings of the judge which are the subject of these assignments related to a procedural matter and did not violate the due process clause of the Fourteenth Amendment to the United States Constitution. *Snyder* v. *Massachusetts,* 291 U. S. 97, 105. *Commonwealth* v. *Millen,* 289 Mass. 441, 486–487. *Commonwealth* v. *Coggins,* 324 Mass. 552, 557.

Assignment 11 relates to the admission in redirect examination of Withee, called as a witness by the Commonwealth, of the conversation between him and Mrs. Burnett when as he testified she called upon him in his apartment at 978

Harrison Avenue on the evening of June 28. On cross-examination by the defendant's counsel Withee had been asked if there had not been "quite an argument" at that time between him and Mrs. Burnett. It was apparent from the nature of the cross-examination that the defendant was attempting to suggest that Withee might have been implicated in the killing of Mrs. Burnett. The Commonwealth was entitled to show what in fact had been said by the two for the purpose of negativing the suggested existence of ill feeling between them. Withee testified that Mrs. Burnett talked about the flat, and said how pleased she was in getting it, that she was going to start moving the next morning, and that she had enough money to move, pay the rent and get by until her boy sent her some. There was no error in the admission of this testimony.

Assignment 13 involves the exclusion of a question in cross-examination to the same witness, Withee, as to the time when he first gave a description to the police of the man who was seen leaving the house with the radio. If there was error, it was almost immediately cured by permitting the witness to answer the same or a similar question. *Commonwealth* v. *Levine*, 280 Mass. 83, 92. *Commonwealth* v. *Slocomb*, 260 Mass. 288, 293.

Assignment 14 relates to the admission of testimony by Freedman, the pawn broker, in reference to a wrist watch which the defendant had obtained from Mary Mitlo and subsequently pawned with Freedman. It is not apparent that the testimony concerning the wrist watch was of any materiality at the time it was offered, but no harm was caused to the defendant as later in the trial he testified in corroboration of Freedman's testimony about the transaction.

Assignment 15 is to the admission of a question to police officer Todd, a witness called by the Commonwealth, as to a talk with Withee on the evening of July 3. The matter in question had been opened by the defendant in cross-examination of Withee and the Commonwealth was entitled to have the entire conversation in evidence. *Commonwealth* v. *Keyes*, 11 Gray, 323. *Farley* v. *Rodocanachi*,

100 Mass. 427, 429. *Dole* v. *Wooldredge,* 142 Mass. 161, 183–185. *Commonwealth* v. *Campbell,* 155 Mass. 537, 538–539. *Commonwealth* v. *Armstrong,* 158 Mass. 78, 79. *Cusick* v. *Whitcomb,* 173 Mass. 330, 331.

Assignment 24 is to the admission on direct examination of a hypothetical question to the Commonwealth's expert witness Stratton as to the presence of human blood on the coveralls and screw driver which had been taken from the defendant's apartment. There was no error in admitting the question as phrased, and the jury were fully instructed that they could not consider the answer of the witness unless each of the assumed facts in the question was found by them to be true. *Phillips* v. *J. H. Lockey Piano Case Co.* 205 Mass. 59, 62–63. *Greene* v. *Boston Elevated Railway,* 207 Mass. 467, 477. *Commonwealth* v. *Noxon,* 319 Mass. 495, 537–538. *Commonwealth* v. *Lundin,* 326 Mass. 551, 557.

Assignment 26 relates to the following question asked in cross-examination of the Commonwealth's witness Geneva Burnett, the daughter-in-law of the deceased: "Have you any other means of identifying that dress [referring to the dress found on the body] as the dress you say you sent from New York, other than the fact that you say the dress you sent from New York contained blue flowers?" The witness answered, "Definitely that is the dress." Counsel for the defendant said, "That is not my question." The answer was allowed to stand and the defendant excepted. There appears to have been no error. The answer technically was not responsive but was competent as evidence. *Commonwealth* v. *McGarty,* 323 Mass. 435, 439–440. Later during the same cross-examination the witness testified that there was nothing but the pattern of blue flowers which enabled her to identify the dress as the one sent by her to Mrs. Burnett.

Assignment 27 is to the admission as an exhibit of the green rosary beads which were found in Mrs. Burnett's apartment. Geneva Burnett had testified that Mrs. Burnett possessed such beads. While the beads were not and

probably could not be definitely identified as those belonging to Mrs. Burnett, in connection with the other evidence as to articles found in Mrs. Burnett's apartment, they were evidence tending to show that the body was that of Mrs. Burnett. *Commonwealth* v. *Sacco,* 255 Mass. 369, 430–431.

Assignments 28 and 29 relate to the admission of a portion of a letter which Geneva Burnett testified she had received from Mrs. Burnett. The portion of the letter admitted read, "My daughter: I am very thankful for . . . you sent me a dress. Fits fine." Although the statement in the letter was hearsay, the defendant does not appear to have been harmed. The witness had testified that in April, 1945, she had mailed to her mother-in-law a dress with blue flowers upon it and that the dress in evidence was or looked like that dress. Other witnesses testified that Mrs. Burnett possessed such a dress and in fact was wearing it on June 29. The statement in the letter as to the receipt of the dress was merely cumulative evidence as to its possession by Mrs. Burnett and its admission was not prejudicial error. *Bendett* v. *Bendett,* 315 Mass. 59, 65–66, and cases cited.

Assignment 30 is to the admission of the testimony of the Commonwealth's witness Sergeant Maune of the Boston police department as to his conversation with Mrs. Taylor, the wife of the defendant, when he and police officer Devlin went to the Taylor apartment on Saturday, July 6. It was contended by the Commonwealth that this conversation had been "opened up" by questions which counsel for the defendant had already asked the sergeant on cross-examination. Counsel had asked Sergeant Maune if he had asked Mrs. Taylor whether her husband had a pair of coveralls, and the witness had answered, "I did not." He had been asked if he inquired whether Taylor had any tools and he had replied, "I did not." He had been asked, "Didn't Mrs. Taylor direct your attention to this tool box," and he had replied, "She did not." It is apparent that these questions did not elicit from Sergeant Maune any part of the conversation

which he had with Mrs. Taylor. The district attorney therefore was not entitled to ask Sergeant Maune to state the conversation. What Mrs. Taylor said to him was hearsay.

The error in admitting this conversation, however, was cured by what thereafter took place. When subsequently police officer Devlin was called by the Commonwealth as a witness he was asked to give the conversation with Mrs. Taylor at the same time and place and he proceeded to do so without objection on the part of the defendant. Still later Mrs. Taylor was called as a witness by the defendant and testified in direct examination to the same conversation. In view of the testimony of Devlin, introduced without objection, and that of Mrs. Taylor, which was offered by the defendant, it cannot be said that the admission of Sergeant Maune's testimony constituted prejudicial error. *Morrison* v. *Lawrence,* 186 Mass. 456, 458. *Clark-Rice Corp.* v. *Waltham Bleachery & Dye Works,* 267 Mass. 402, 412. *Runels* v. *Lowell Sun Co.* 318 Mass. 466, 469–470. *Newton Construction Co.* v. *West & South Water Supply District of Acton,* 326 Mass. 171, 174.

Assignments 31 and 32 concern the admission of testimony by two witnesses called by the Commonwealth, Abramowitz and Rittenberg, to the effect that John Ufie was not in Boston at the time the defendant claimed to have been repairing his automobile on the morning of June 29. The testimony tended to corroborate the testimony of Ufie that he had no dealing with the defendant on that morning and was admissible.

Assignments 33 and 34 disclose no error. They involve objections to hypothetical questions similar in nature to the question heretofore considered under assignment 24.

There is no merit in assignment 35 which relates to the qualification of one Bird as an expert on fingerprints. His qualification as a witness depended on a preliminary finding of the judge which in this instance could not be found erroneous.

Assignment 38, filed at the conclusion of the Common-

wealth's case, is to the denial of a motion for a directed verdict in each case. There was no error. From the evidence introduced by the Commonwealth the jury could have found that the body found in the closet was that of Mrs. Burnett; that she had been murdered; and that the defendant had committed the murder on June 29. The jury could also have found that the defendant stole the radio from her by the use of force and was guilty of robbery.

Assignment 39 is founded on an exception to the admission of the radio, dress, handbag, broom, mop, and rosary beads as exhibits. There was no error. Of these articles the radio had been pawned by the defendant, the dress was on the body, and the handbag, broom, mop, and rosary beads were found in Mrs. Burnett's apartment. They were all shown to be similar in description to articles possessed by Mrs. Burnett and were properly admitted in evidence.

On the first indictment the judgment is affirmed, and on the second indictment the verdict of guilty is to stand.

*So ordered.*